IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ZACHARY HOPKINS,<br><br>      Plaintiff,<br><br>  v.<br><br>SERRA NISSAN OLDSMOBILE, INC., et al.,<br><br>      Defendants. | Civil Action No. 2:23-cv-1731-ACA |

**DEFENDANTS' RESPONSE TO
PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS**

    Defendants Serra Nissan Oldsmobile, Inc. and Serra Automotive Management Group, Inc. ("Serra") respectfully submit this separate Response to Plaintiff's Additional Undisputed Statement of Facts, as set forth in Plaintiff's Response and Objection to Serra's Motion for Partial Summary Judgment (Doc. 120). This Response is submitted concurrently with Serra's Reply Brief.

| No. | Plaintiff's Undisputed Fact and Supporting Evidence: | Serra's Response and Supporting Evidence |
|---|---|---|
| 4. | Sometime in February or March 2021, Christopher Burt provided the Vehicle to his daughter's boyfriend, Michael Boles, so Boles could help find someone to take over payments. Burt never sold the Vehicle or | *Disputed*. Plaintiff's assertion that Burt "never transferred ownership" is inconsistent with the statutory definition of "transfer," which includes "any change of ownership by any means, whether or not for consideration." 49 U.S.C. § 32702(8). Burt gave possession and control of the Vehicle to Boles with |

| No. | Plaintiff's Undisputed Fact and Supporting Evidence: | Serra's Response and Supporting Evidence |
|---|---|---|
|  | transferred ownership of the Vehicle to anyone.<br><br>See Doc. 19; see Doc. 118-3, "Depo. of Christopher Burt," pgs. 12:3:22; 18:7-10; 20:3-9; 36:11-17. | the intent that someone else assume payment obligations. This conduct constitutes a transfer under federal law. |
| 5. | Boles later had a falling out with Burt's daughter and went to prison. The vehicle was never seen again. Boles' family told Burt "somebody picked the car up." Burt assumed it had been repossessed by Nissan Motor Acceptance.<br><br>See Doc. 118-3, "Depo. of Burt," pgs. 13:1-20; 14:13-15:8; 16:1-15. | *Disputed*. Burt's testimony shows he did not know what happened to the Vehicle and merely speculated that it had been repossessed. He stated, "So I don't know if they meant at the Nissan place or the loan company picked it up or who picked it up. But I couldn't find the car, so I just left it at that." Doc. 118-3, 15:1–6. Plaintiff's assertion overstates Burt's certainty. |
| 9. | According to records obtained by Serra around October 22, 2021, on July 22, 2021, Indiana Bureau of Motor Vehicle records indicate that Alvin Lee Stabler purchased the vehicle in Indiana on July 22, 2021.<br><br>See Doc. 111-3, pgs. 1-14. | *Undisputed for purposes of summary judgment.* Serra does not contest that the Indiana BMV records reflect this transaction as quoted. However, Serra notes that it objects to any implied legal conclusion drawn from the content of those third-party records. |
| 20. | Based on the dates and mileage difference between the front and back of the Vehicle's Certificate of Title, Brooklyn Holiday put 9,524 miles on the Vehicle in six days, which equates to 1,587 miles per day, for six days, nonstop, 24 hours a day, at 66.12 miles per hour. | *Disputed*. Plaintiff's calculation is speculative and relies on the assumption that the odometer readings listed on the title documents are both accurate and attributable to Holiday, Jr. However, testimony from Brooklyn and Pauletta Holiday indicates that Pauletta was the primary driver during the relevant period, which spanned over four months, |

| No. | Plaintiff's Undisputed Fact and Supporting Evidence: | Serra's Response and Supporting Evidence |
|---|---|---|
| | <u>Compare</u> Doc. 111-2 pgs. 9 and 10. | not six days. *See* Doc. 111-3 at 25:15–27:12, 32:18–33:7, 36:17–40:22, 81:22–82:5, 92:10–94:12, 97:2–23, 111:17–112:22.<br><br>Moreover, Holiday, Jr. contradicted his own deposition testimony regarding the source and accuracy of the odometer reading. Initially, he testified that both Id Auto and the courthouse conducted a VIN verification to confirm the vehicle's VIN and mileage. *See* Doc. 96-3 at 72:3–19. However, upon further questioning, he insisted that only the courthouse performed the VIN inspection, not Id Auto. When asked to explain the origin of the 45,900-mile odometer reading listed on the title, Holiday, Jr. claimed that Id Auto must have entered the mileage based on paperwork he provided, despite his consistent testimony that Id Auto never physically inspected the vehicle. *See* Doc. 96-3 at 60:13–21, 139:13–140:13, 174:16–175:11, 196:5–198:8; Doc. 111-13 at 25:15–27:12.<br><br>This inconsistency in Holiday, Jr.'s testimony significantly undermines Plaintiff's assumption that the odometer reading on the Alabama title is accurate or reliable. |
| 22. | Brooklyn Holiday testified that he did not sign the reverse side of the Vehicle title. | ***Disputed in part.*** Serra does not dispute Holiday, Jr.'s testimony that he did not sign the reverse of the title but disputes any implication that Serra intentionally |

| No. | Plaintiff's Undisputed Fact and Supporting Evidence: | Serra's Response and Supporting Evidence |
|---|---|---|
| | Doc. 96-3, pgs. 73:15-74:16; 137:1-20. | prevented him from doing so or acted deceptively. Serra's standard practice permits personnel to complete the seller section based on available documentation during intake. *See* Doc 111-15, pp. 42:18-43:15, 49:14-52:14. |
| 23. | Brooklyn Holiday testified that he did not sign a power of attorney related to the sale of the Vehicle. Id. | *Disputed in part.* Serra does not dispute Holiday, Jr.'s testimony but disputes the implication that it intentionally failed to obtain a power of attorney. Testimony from Serra personnel indicates that they believed a power of attorney had been executed and searched for it later when it could not be located. *See* Doc 111-15, pp. 47:19-48:10, 50:3-52:20. |
| 24. | There is no evidence of any power of attorney signed by Holiday.<br><br>Doc. 111-15, "Depo. of Maric," pgs. 50:17-51:5; Doc. 91-1, "Depo. of Lloyd," pgs. 372:18-374:20; Doc. 116, "Affidavit of Maric." | *Disputed in part.* Serra acknowledges that a signed power of attorney from Holiday, Jr. has not been located, but disputes the implication that one never existed. Serra personnel testified they searched for the document and believed it had been executed, consistent with standard procedure. The absence of the document does not prove intentional omission. *See* Doc 111-15, pp. 47:19-48:10, 50:3-52:20. |
| 25. | Serra did not have or produce an odometer disclosure statement from Brooklyn Holiday.<br><br>Doc. 91-1, "Depo. of Lloyd," pgs. 333:19-334:9, 375:9-12; Doc. 116, "Affidavit of Maric." | *Disputed.* Serra did not receive an odometer disclosure from Holiday, Jr., but disputes any attribution of fault. Holiday, Jr., who testified he operated businesses engaged in buying and selling used vehicles, qualifies as a seller under the Federal Odometer Act and was responsible for providing a disclosure statement. *See* Doc. 96-3, pp. 50:17-51:22. |

| No. | Plaintiff's Undisputed Fact and Supporting Evidence: | Serra's Response and Supporting Evidence |
|---|---|---|
| 26. | Denise Moore signed the reverse side of title received from Brooklyn Holiday as both buyer and seller.<br><br>Doc. 111-15, pgs. 49:4-52:1. | ***Disputed.*** Plaintiff mischaracterizes the record. Moore signed the buyer section in her own name and signed the seller section on behalf of Kimberly Maric, with Maric's authorization. *See* Doc. 111-2, pg. 5; *See* Doc. 111-15, p. 49:17-22. |
| 27. | On September 27, 2021, Serra Volkswagen obtained a CARFAX report on the Vehicle at 3:53:50 pm.<br><br>Doc. 118-9, "CARFAX subpoena response." | ***Undisputed for purposes of summary judgment.*** Serra does not contest that a CARFAX report was accessed using Serra Volkswagen's account at the stated date and time. *See* Doc. 118-9. |
| 28. | On September 28, 2021, Serra Nissan obtained a CARFAX report on the Vehicle at 6:46:21 am. Id. | ***Undisputed for purposes of summary judgment.*** Serra does not contest that a CARFAX report was accessed using Serra Nissan's account at the stated date and time. *See* Doc. 118-9. |
| 29. | Indiana DMV records state a title issued in name of Alvin Lee Stabler on October 4, 2021, with mileage of 30,150 and odometer brand of "NOT ACTUAL READING." See Doc. 111-3, pg. 2. These records were obtained by Serra around October 22, 2021, id., pg. 1. | ***Disputed.*** Plaintiff mischaracterizes the record. The documents reflect that Indiana BMV mailed the records on or around October 22, 2021, but do not establish when Serra actually received them. The records themselves note an expected 14–21 day processing window. *See* Doc. 111-3, pg. 1. |
| 30. | In October of 2021, Serra's employee Andrew Gingras sent a "request for paperwork from Indiana to see why there's a mysterious title that showed up on CARFAX."<br><br>Doc. 91-1, "Depo of Curtis Lloyd," pg. 76:10-20. | ***Objection and disputed.*** Serra objects to this "fact" as hearsay and immaterial under Fed. R. Evid. 802 and 401. The quoted language is attributed to Gingras but cited through Lloyd's testimony, which lacks foundation. Subject to and without waiving this objection, Serra does not dispute that it initiated contact with Indiana BMV in response to |

| No. | Plaintiff's Undisputed Fact and Supporting Evidence: | Serra's Response and Supporting Evidence |
|---|---|---|
| | | confusion caused by conflicting CARFAX data. |
| 33. | On October 26, 2021, Serra Nissan obtains a Nissan Motors "National Service History" for the Vehicle stating the Vehicle is a "Branded Vehicle." <br><br> Doc. 118-10. | *Disputed*. Plaintiff mischaracterizes the record. The cited document is a National Service History report, but it was not obtained or printed on October 26, 2021. The face of the document states it was printed on February 21, 2025. *See* Doc. 118-10. No admissible evidence links this document to any action by Serra on October 26, 2021. |
| 34. | On October 27, 2021, Serra Nissan work orders indicate Serra performed a "Certified Preowned" ("CPO") vehicle inspection on the Vehicle. <br><br> Doc. 118-11. | *Disputed*. Plaintiff mischaracterizes the record. The referenced work order does not show activity on October 27, 2021. It reflects that the repair order was opened on September 27, 2021, and closed on September 28, 2021—nearly a month earlier. *See* Doc. 118-11. |
| 35. | In October of 2021, Serra Nissan's employee Andrew Gingras communicated with CARFAX about the title discrepancy. <br><br> Doc. 91-1, "Depo of Curtis Lloyd," pg. 74:2-15. | *Objection and disputed*. Serra objects to this assertion as hearsay and immaterial. Statements made by Gingras are not admissible through Lloyd's deposition and are not independently verified. *See* Fed. R. Evid. 802, 401, 402. To the extent any communication occurred, it was a routine inquiry and did not constitute an admission or acknowledgment of liability. |
| 38. | On November 16, 2021, Serra recorded the odometer reading of 55,424 "ACTUAL MILES" on reverse side title when transferring title to Hopkins. <br><br> Doc. 111-2, pg. 10. | *Disputed*. Serra does not dispute that the reverse side of the title reflects 55,424 miles as "ACTUAL." However, Serra disputes any implication of fraud or misrepresentation. That mileage matched the Vehicle's dashboard reading and available documentation at the time. *See* Doc. 111-1, pp. 63-64. Serra recorded |

| No. | Plaintiff's Undisputed Fact and Supporting Evidence: | Serra's Response and Supporting Evidence |
|---|---|---|
|  |  | the mileage pursuant to a valid power of attorney executed by Plaintiff. *Id.*, p. 18. |
| 39. | November 16, 2021, Serra provided Hopkins an odometer disclosure statement for Vehicle of 55,424 "ACTUAL" miles. See Doc. 111-1, pg. 30. | *Disputed.* Serra does not dispute that it provided an odometer disclosure form listing 55,424 "ACTUAL" miles, but disputes any suggestion of intent to defraud or mislead. *See* Doc. 111-1, pp. 29-30. The mileage matched the VIN photo and odometer display available at the time of sale and was disclosed in good faith based on available records. *Id.*, pp. 63-64. |
| 40. | As a pattern and practice, Serra personnel that sign the Certificate of Title and who certify the mileage on the title never personally inspect the vehicles which are being transferred or sold by Serra.<br><br>Doc. 111-15, "Deposition of Maric," pgs. 63:3-16, 64:4-7, 64:22-65:6. | *Disputed.* Plaintiff mischaracterizes the testimony. While personnel in Serra's finance and accounting department may not inspect vehicles directly, they rely on multiple verified sources—such as trade-in data, VIN readings, system entries, and bills of sale—to complete title paperwork. *See* Maric Depo, Doc. 111-15, pgs. 63:3–16; 64:4–7; 64:22–65:6. |
| 41. | As a pattern and practice, Serra does not use "secure powers of attorney" to certify mileage on the vehicles transferred by Serra.<br><br>Doc. 111-15 pg. 52:7-20. | *Disputed*. Plaintiff mischaracterized the testimony of Serra's employee. The cited deposition does not establish any general "pattern and practice" by Serra regarding the use of secure powers of attorney. Instead, the testimony relates specifically to the transaction involving Plaintiff's vehicle, in which Serra did obtain a secure power of attorney. Serra further objects to this statement as immaterial, as the underlying assertion lacks foundation and is not supported by admissible evidence. Doc. 111-1, p. 18; see also Doc. 111-15, p. 52:7-20. |

| No. | Plaintiff's Undisputed Fact and Supporting Evidence: | Serra's Response and Supporting Evidence |
|---|---|---|
| 46. | Serra's general manager Curtis Lloyd testified that Serra "absolutely knew there was an issue with the title" at the time of the Hopkins' transaction.<br><br>Doc. 91-1, "Deposition of Curtis Lloyd," pg. 286:17-22. | *Disputed.* Plaintiff mischaracterizes the testimony. While Lloyd acknowledged concerns, the record reflects that Serra believed the issue was with the CARFAX report, not the validity of the title itself. Serra proceeded with the sale based on its understanding that the title was clean and any confusion stemmed from CARFAX notations, not legal defects. Doc. 111-15, p. 55:1-22. |
| 47. | At 7:22:17 pm CST, on November 16, 2021, a CARFAX was printed for the Vehicle. Serra only produced a single page of the November 6, 2021 CARFAX. The top portion of the page produced by Serra is cut off, and… shows a whimsical "CAR FOX" next to an information box which states, without reference to a specific vehicle:<br>A NAM title is issued when the owner discloses to a DMV mileage fraud, a broken odometer or that the actual mileage of this vehicle is unknown. Mileage reported after this reading is potentially unreliable.<br><br>Doc 111-1, pg. 76 | *Disputed.* Serra does not dispute the timestamp or contents of the single page produced, but disputes any implication that it intentionally withheld additional pages. Serra's standard practice is to print the full CARFAX, retain the last signed page for its files, and provide the rest to the customer. The report at issue clearly references the Vehicle and aligns with this procedure. *See* Doc. 91-1, pp. 233:2-7, 257:15-21, 286:2-287:1, 295:21-297:21, 299:17-22; *see also* Doc. 111-15, pp. 86:8-89:2. |
| 48. | Hopkins does not remember seeing or signing any CARFAX at Serra. | *Disputed.* Plaintiff's affidavit states only that he does not remember receiving or signing a CARFAX, not that it definitively did not occur. Serra personnel —including Curtis Lloyd and |

| No. | Plaintiff's Undisputed Fact and Supporting Evidence: | Serra's Response and Supporting Evidence |
|---|---|---|
|  | Doc. 118-1, "Affidavit of Hopkins." | Kimberly Maric—testified that it is Serra's standard practice to provide the full report and retain the last page signed by the customer. *See* Doc. 91-1, pp. 233:2-7, 257:15-21, 286:2-287:1, 295:21-297:21, 299:17-22; *see also* Doc. 111-15, pp. 86:8-89:2. |
| 49. | The single page of the CARFAX report produced by Serra does not reference an Indiana title, and Indiana mileage discrepancy, nor does it state Hopkins' vehicle has a "NAM" title.<br><br>Doc. 111-1, pg. 67. | *Disputed.* Serra disputes the implication that this was the only page provided to Plaintiff. Serra's business practice is to provide the full report and retain the last page. Plaintiff presents no admissible evidence that additional pages were withheld. The single page retained is consistent with Serra's records policy and is tied to the subject Vehicle. *See* Doc. 91-1, pp. 233:2-7, 257:15-21, 286:2-287:1, 295:21-297:21, 299:17-22; *see also* Doc. 111-15, pp. 86:8-89:2. |
| 50. | CARFAX does not have any record of Serra obtaining the single page of the CARFAX report produced by Serra at any time on November 16, 2021.<br><br>Compare timestamps on Doc. 111-1, pg. 67 and Doc. 118-8. | *Objection and disputed.* Serra objects to this statement as immaterial. The CARFAX page is timestamped November 16, 2021, and Serra personnel routinely retrieve reports using mobile devices or individual logins not always captured in CARFAX's main account logs. The existence of the document itself demonstrates that it was retrieved on that date. *See* Doc. 111-15, pp. 79:17-82:18. |
| 51. | Serra does not have the rest of the CARFAX, or any other page of the CARFAX of which Doc. 111-1, pg. 67, is a part. "Serra provided the only page of the CarFax report in its possession." | *Disputed.* Serra disputes any implication that it possessed and withheld additional pages. As repeatedly stated, Serra's routine practice is to provide the full CARFAX report to the customer and retain only the last signed page. The document produced is consistent with |

| No. | Plaintiff's Undisputed Fact and Supporting Evidence: | Serra's Response and Supporting Evidence |
|---|---|---|
|  | Doc. 91-1, "Depo of Lloyd," pgs. 257:8-258:9, 295:13-297:21; Doc. 111-15, "Affidavit of Maric," Doc. 116; Doc. 916, pg. 3. | that practice and clearly pertains to the subject Vehicle. *See* Doc. 91-1, pp. 233:2-7, 257:15-21, 286:2-287:1, 295:21-297:21, 299:17-22; *see also* Doc. 111-15, pp. 86:8-89:2. |
| 52. | Serra claims it provided Hopkins with the CARFAX to alert him that the true mileage on the Vehicle was unknown "because the part above [Doc. 111-1, pg. 67] would have been showing the Indian [sic] with the red triangle and he would have seen and known." <br><br> Doc. 91-1, "Depo of Lloyd," pgs. 297:12-298:7. | *Disputed.* Serra disputes any implication that it withheld information or acted deceptively. Lloyd testified that the red CARFAX warning would have been visible on the report given to Plaintiff. Doc. 111-1, pg. 67. Serra followed its standard process of providing the report and retaining the final signed page. Plaintiff presents no admissible evidence to rebut that. |
| 53. | Serra did not provide Hopkins with anything in writing prior to the sale or at any time that says Serra is "repairing the CARFAX." <br><br> Doc. 91-1, "Depo of Lloyd," pgs. 297:22-298:11. | *Disputed.* Serra disputes any implication that it had an obligation to provide such written documentation or that its absence suggests deception. Serra disclosed what it knew about the Vehicle's history and followed standard documentation procedures. Doc. 111-15, pp. 89:18-90:5. Plaintiff presents no evidence of affirmative misrepresentation or concealment. |
| 54. | At all times, Serra represented to Hopkins that the vehicle had 55,424 actual miles. <br><br> See Doc. 118-1, "Affidavit of Hopkins." | *Disputed.* Serra recorded the mileage as 55,424 based on the Vehicle's dashboard, VIN photo, and available records at the time of sale. Plaintiff's suggestion that Serra misrepresented the mileage is unsupported by admissible evidence. Serra acted in good faith based on the data available to it at the time. *See* Doc. 111-1, pp. 29-30, 63-64. |

| No. | Plaintiff's Undisputed Fact and Supporting Evidence: | Serra's Response and Supporting Evidence |
|---|---|---|
| 55. | Serra did not disclose to Hopkins that that an Indiana title had been issued for the Vehicle which stated the vehicle had 30,150 miles with a "NOT ACTUAL READING" title brand.<br><br>See Doc. 118-1, "Affidavit of Hopkins." | *Disputed.* Serra disputes the assertion that it concealed material information. It provided Plaintiff with a CARFAX report, consistent with standard practice. Serra believed the report accurately reflected the Vehicle's history, and Plaintiff has not presented evidence that Serra was aware of or intentionally withheld the Indiana title branding. *See* Doc. 91-1, pp. 233:2-7, 257:15-21, 286:2-287:1, 295:21-297:21, 299:17-22; *see also* Doc. 111-15, pp. 86:8-89:2. |
| 57. | On November 16, 2021, Serra video records Hopkins signing sales documents starting at 7:23:36 pm. There is no evidence of Hopkins reviewing or signing a CARFAX during the recording.<br><br>Doc. 118-15. | *Objection and disputed.* Serra objects to this assertion on the grounds that it is improper and unsupported. Plaintiff has not provided Serra with a copy of the referenced video recording, and therefore it should not be considered for evidentiary purposes. Serra has not been given a fair and equal opportunity to review the video or assert appropriate objections.<br><br>Serra further objects to this assertion as immaterial under Fed. R. Civ. P. 56, and disputes any implication that the alleged absence of a CARFAX report in the video proves it was never reviewed or signed. *See* Doc. 118-15.<br><br>Further, Plaintiff's statement does not controvert the truth of the matter asserted. Serra maintains that it followed its standard practice of providing the full CARFAX report to the customer and retaining the final signed page. CITE. |

| No. | Plaintiff's Undisputed Fact and Supporting Evidence: | Serra's Response and Supporting Evidence |
|---|---|---|
| 58. | Around July 6, 2022, Hopkins went to Serra Chevrolet to trade-in the Vehicle to purchase another vehicle. Serra Chevrolet told Hopkins that Serra Chevrolet would not take the Vehicle on trade because it had a branded title.<br><br>Doc. 111-14, "Deposition of Hopkins," pgs. 29:12-35:7. | *Disputed.* Serra disputes Plaintiff's assertion, which is based solely on his own testimony and lacks independent corroboration. Curtis Lloyd testified that Plaintiff's trade-in was declined for reasons related to creditworthiness, not because of the Vehicle's title branding. *See* Doc. 91-1, p. 117:2-12. |
| 59. | Hopkins also attempted to trade-in the Vehicle at Serra Nissan, but "they informed [me] that they couldn't take it because of the title brand even after I had explained to them that I purchased the vehicle from [them].<br><br>Doc. 111-14, "Deposition of Hopkins," pgs. 29:20-30:21. | *Disputed.* Serra disputes this account, which is unsupported by documentation and contradicted by Lloyd's testimony. Serra personnel testified that Plaintiff's trade-in was declined due to his credit score. Plaintiff's self-serving statement does not create a genuine factual dispute. *See* Doc. 91-1, p. 117:2-12. |
| 60. | Serra Chevrolet obtained a CARFAX on the Vehicle on July 6, 2022. Serra Nissan obtained a CARFAX on the Vehicle on July 6, 2022. Serra Volkswagen obtained a CARFAX on the Vehicle on July 6, 2022.<br><br>Doc. 118-9. | *Objection.* Serra objects to this asserted fact as immaterial to the issues raised in Plaintiff's Motion. Subject to and without waiving that objection, Serra does not dispute that CARFAX reports were pulled on the referenced date using accounts associated with Serra's dealerships. Doc. 118-9. |
| 63. | There is no record of any secure power of attorney or power of attorney from Holiday to Serra that would allow Serra to sign the reverse side of the Vehicle's | *Disputed in part.* Serra does not dispute that no such document was located, but it disputes the implication that none ever existed. Serra personnel testified that they searched for a power of attorney |

| No. | Plaintiff's Undisputed Fact and Supporting Evidence: | Serra's Response and Supporting Evidence |
|---|---|---|
|  | title and certify mileage on the title.<br><br>Doc. 111-15, "Depo. of Maric," pgs. 50:17-51:5; Doc. 91-1, "Depo. of Lloyd," pgs. 372:18-374:20; Doc. 116, "Affidavit of Maric." | and believed one had been executed in accordance with standard procedures. *See* Doc 111-15, pp. 47:19-48:10, 50:3-52:20. |
| 64. | Serra had possession of the Alabama Title for the Vehicle, Doc. 111-2, pgs. 9-10, and actual knowledge of the branded Indiana title because it referenced it as a "Primary document," and "supporting document" and by identifying it by state of issue, title number, and date of issue on the title application it prepared for Hopkins.<br><br>Doc. 111-2, pg. 8 | *Disputed.* Serra disputes Plaintiff's characterization that it had "actual knowledge" of the Indiana title branding. Although the Indiana title number was listed on the Alabama application as a "supporting document," that reference alone does not establish that Serra reviewed or understood the title's branding. Serra understood there was a discrepancy on the CARFAX but did not believe there was a title issue. Doc. 111-15, p. 55:1-22. |
| 65. | A complete CARFAX report for the Vehicle was obtained on November 7, 2023. This report indicates the Vehicle has a branded title of "NOT ACTUAL MILEAGE. Doc. 118-7. When the entire report is viewed, what appears to have been cut off from the top of the single page CARFAX produced by Serra, Doc. 1111, pg. 67, is visible.<br><br>See Doc. 118-7. | *Disputed.* Serra disputes any implication that it intentionally withheld information or altered the report. Serra objects to the assertion as immaterial and further maintains that the November 2023 report does not reflect what Serra knew in 2021. Serra consistently stated that it believed the CARFAX needed clarification but did not interpret it as evidence of a branded title. |