FILED

2026 Jan-05  PM 03:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **ZACHARY HOPKINS,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **2:23-cv-1731-ACA** |
| | ] | |
| **SERRA NISSAN OLDSMOBILE, INC.,** | ] | |
| **et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## MEMORANDUM OPINION

Defendants Serra Nissan Oldsmobile, Inc., and Serra Automotive
Management Group, Inc. (collectively, "Serra") sold a car with an Alabama title to
Plaintiff Zachary Hopkins. Mr. Hopkins later learned that the car also had an Indiana
title that carried a "Not Actual Mileage" brand. He sues Serra, asserting:
(1) violation of the Motor Vehicle Information and Cost Savings Act ("Odometer
Act"), 49 U.S.C. § 32705(a) ("Count One"); (2) wantonness, negligence, or
recklessness ("Count Two"); (3) fraud, misrepresentation, or fraudulent suppression
("Count Three"); (4) breach of fiduciary duty ("Count Four"); (5) negligent or
wanton hiring, training, supervision, and retention ("Count Five"); (6) breach of
express warranties ("Count Six"); (7) breach of warranty of title ("Count Seven");
(8) fraudulent concealment ("Count Eight"); and (9) breach of contract ("Count
Nine"). (Doc. 1 at 11–33).

Serra moves for summary judgment on all counts except Counts Two and Seven. (Doc. 112 at 2). The court **WILL GRANT IN PART** and **DENY IN PART** the motion. The court **WILL DENY** the motion for summary judgment as to Counts One, Three, Four, Six, and Eight, but **WILL GRANT** the motion as to Count Five because Mr. Hopkins has not presented evidence from which a jury could find that Serra knew of any incompetency of its employees. The court **FINDS AS MOOT** the motion for summary judgment as to damages for reputational harm because Mr. Hopkins does not request that type of damages. The court **WILL DENY** the motion for summary judgment on the other types of damages Mr. Hopkins requests.

## I.    BACKGROUND

When ruling on a motion for summary judgment, the court "view[s] the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve[s] all reasonable doubts about the facts in favor of the non-movant." *Washington v. Howard*, 25 F.4th 891, 897 (11th Cir. 2022) (quotation marks omitted). Where the parties have presented evidence creating a dispute of fact, the court's description of the facts adopts the version most favorable to the non-movant. *See id.*; *see also Cantu v. City of Dothan*, 974 F.3d 1217, 1222 (11th Cir. 2020) ("The 'facts' at the summary judgment stage are not necessarily the true, historical facts; they may not be what a jury at trial would, or will, determine to be the facts.").

In 2019, Christopher Burt bought a Nissan Altima. (Doc. 111-1 at 1). Alabama issued a title in Mr. Burt's name. (Doc. 111-1 at 5). That title reflected an "actual" odometer reading of ten miles. (*Id.*). The Alabama Department of Revenue has no record of that title ever being transferred to any other person or company. (*See generally* doc. 111-1).

In early 2021, Mr. Burt gave the car to his daughter's boyfriend, believing the boyfriend would take over the car payments. (Doc. 118-3 at 3, 5, 9). The car disappeared when the boyfriend went to prison, and Mr. Burt assumed it had been repossessed. (*Id.* at 4). In fact, Brooklyn Holiday, Jr. bought the car on behalf of his mother in May 2021. (Doc. 111-5 at 5; doc. 111-13 at 9; doc. 40-1 at 1–2). Mr. Holiday purchased the car from a company called Whitt Automotive LLC, which was run by a man with business connections to Mr. Holiday. (Doc. 96-3 at 10; doc. 118-5). Mr. Holiday's mother possessed the car for the next few months. (Doc. 111-13 at 9–10).

While the car was registered to and in the possession of Mr. Holiday in Alabama, a company called Victory Lien Services published in a local Indiana newspaper a notice that the same car had been abandoned in January 2021 and would be sold to satisfy a mechanic's lien. (*Id.* at 7, 10, 13). A mechanic's bill of sale states that Alvin Stabler bought the car at auction on July 22, 2021. (*Id.* at 7). On September

10, 2021, Mr. Stabler applied to the Indiana Bureau of Motor Vehicles for a title for the car, reporting a "not actual" mileage of 30,150. (Doc. 111-3 at 5–6).

While Mr. Stabler's title application was pending, Mr. Holiday applied to the Alabama Department of Revenue to transfer the title from Georgia (which had never issued a title to this car) to Alabama. (Doc. 111-1 at 10; doc. 111-7). On September 21, 2021, the Alabama Department of Revenue issued a title in Mr. Holiday's name, showing an "actual" odometer reading of 45,900 based on Mr. Holiday's application. (Doc. 111-2 at 9; *see* doc. 111-1 at 9). Shortly afterward, Indiana issued Mr. Stabler a title to the same car, reporting a "not actual" mileage of 30,150. (*Compare* doc. 111-3 at 2 (issue date of October 4, 2021), *with id.* 4 (issue date of September 23, 2021)).

On September 27, 2021, Mr. Holiday sold the car to Serra. (Doc. 111-1 at 84). Serra did not obtain an odometer disclosure statement from Mr. Holiday. (*See* doc. 91-1 at 95). Nevertheless, the title assignment form, which a Serra employee filled out, reported an "actual" mileage of 55,424. (Doc. 111-2 at 10; doc. 96-3 at 20, 36; doc. 111-15 at 13).

In the day or two after Serra bought the car from Mr. Holiday, it obtained a CARFAX report about the car. (Doc. 118-9). The CARFAX report noted that both Alabama and Indiana had issued titles to the same car around the same time, and that the Indiana title had a reported mileage of 30,150 with a "not actual mileage" brand.

(Doc. 118-7 at 8–9). Because of this discrepancy, in October 2021, Serra requested paperwork from Indiana about the car's title.[1] (Doc. 91-1 at 20; doc. 111-3 at 1). It is unclear when Serra received Indiana's records. On November 5, 2021, Serra requested the Alabama Department of Revenue's title records. (Doc. 118-14).

On November 16, 2021, Serra sold the car to Mr. Hopkins for $25,180. (Doc. 111-2 at 6, 8). In the morning, the Serra salesperson took photographs of the car's VIN number and dashboard showing a mileage of 55,424, and signed a VIN verification form stating that the mileage was 55,424. (Doc. 111-1 at 63–65). Serra provided Mr. Hopkins an odometer disclosure form stating that the actual mileage of the car was 55,424. (*Id.* at 30). Mr. Hopkins signed a power of attorney appointing Serra as his attorney-in-fact to complete the title transfer. (*Id.* at 18). The title application reported that the car's actual mileage was 55,424 and that the "primary" and "supporting" documents were the Indiana title. (*Id.* at 17). And on the title assignment on the back of the certificate of title, Serra reported that the car had an "actual" mileage of 55,424. (Doc. 111-2 at 10). Mr. Hopkins also signed paperwork

---

[1] Serra objects to any reliance on its corporate representative's testimony about a Serra employee requesting records from Indiana, on the bases that the testimony is hearsay and immaterial. (Doc. 121-1 at 5 ¶ 30). The corporate representative's testimony about what an employee did is not hearsay. *See* Fed. R. Evid. 801(c) (defining hearsay as "a statement that[ ] . . . the declarant does not make while testifying at the current trial or hearing[ ] and . . . a party offers in evidence to prove the truth of the matter asserted in the statement"); *see also* Fed. R. Civ. P. 30(b)(6) (providing that a corporate representative testifies on behalf of the organization). And the evidence about what Serra's employee did in response to learning about the Indiana title is material to Mr. Hopkins's fraud claims. *See* Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.").

in which Serra "expressly disclaim[ed] all warranties, either express or implied." (Doc. 111-1 at 25–28).

Central to many of Serra's arguments is a CARFAX report that Mr. Hopkins signed on November 16, 2021. (*See* doc. 112 at 14–15, 17–18, 21, 23–25). Serra produced only one page from the CARFAX report as a part of its package of transaction documents. (Doc. 111-1 at 67). That page reflects that Serra either ordered it or printed it at 7:22 PM on November 16. (*Id.*). A box at the top of the page contains this language: "A NAM title is issued when the owner discloses to a DMV mileage fraud, a broken odometer or that the actual mileage of this vehicle is unknown. Mileage reported after this reading is potentially unreliable." (*Id.*). But nothing on the rest of the page implicitly or explicitly connects that language to this car. (*See id.*). Below that disclosure are two entries relating to Serra's servicing of the car. (Doc. 111-1 at 67). At the bottom of the page is Mr. Hopkins's signature. (*Id.*). Mr. Hopkins concedes that the signature "appears to be similar to [his] signature, but [he does] not remember signing this document, nor [does he] know how [his] signature came to be on this document." (Doc. 118-1 ¶ 7). He also denies any awareness of having signed a CARFAX report. (*Id.* ¶ 6).

There is a thirty-minute video of Mr. Hopkins signing paperwork relating to this sale.[2] (*See* doc. 118-15). The video begins at 7:23 PM, one minute after Serra either ordered or printed the CARFAX report. (*Id.* at 00:01; *see* doc. 111-1 at 67). In the video, the Serra employee carefully explains the extended warranty Serra offered and answered Mr. Hopkins's questions about the same, clarified that the car was not certified pre-owned despite the salesman's earlier representation, and then—with one exception—briefly explains each document he asks Mr. Hopkins to sign. (Doc. 118-15). The one exception is when the salesperson gives Mr. Hopkins a single page that, although blurry and indistinct, might be the CARFAX signature page. (*Id.* at 25:25–25:30; *compare id.*, *with* doc. 111-1 at 67). The salesperson does not explain what the page is but instructs Mr. Hopkins to sign it, which he does. (Doc. 118-15 at 25:25–25:30). The salesperson does not provide Mr. Hopkins a copy of any other documents that might be the rest of the CARFAX report. (*See id.*). Taken in the light most favorable to Mr. Hopkins, this video shows that either: (1) Serra did not give Mr. Hopkins the CARFAX report; or (2) Serra gave Mr. Hopkins a single page of

---

[2] Serra objects to consideration of the video on the grounds that Mr. Hopkins did not provide a copy of the recording to Serra and the recording is immaterial. (Doc. 121-1 at 11 ¶ 57). The video is self-evidently a video Serra recorded of its salesperson's office. (*See* doc. 118-15). Serra has not explained how Mr. Hopkins would have a copy of it if Serra was not the one that produced the video to him. (*See* doc. 121-1 at 11 ¶ 57). If Mr. Hopkins did obtain this video through a source outside Serra, Serra has not provided any evidence that he withheld it from Serra in the face of a proper discovery request. (*See id.*). And the video is highly relevant to the question whether Mr. Hopkins reviewed the CARFAX report. *See* Fed. R. Evid. 401.

the CARFAX report, that single page contained no information about the Indiana branded title, and the Serra employee did not explain what Mr. Hopkins was signing.

In July 2022, Mr. Hopkins attempted to trade in the car at another Serra dealership. (Doc. 111-14 at 8–9). That dealership told him that it would not allow the trade-in because the car had a branded title.[3] (*Id.* at 9). He therefore took the car back to the original Serra dealership and attempted to trade it in there. (*Id.* at 9). That dealership also declined to allow the trade-in "because of the title brand." (*Id.*). Mr. Hopkins ultimately bought a new car from Serra without trading in this car. (Doc. 111-14 at 10).

## II.    DISCUSSION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To defeat a motion for summary judgment, "[t]he nonmoving party must offer more than a mere scintilla of evidence for [his] position; indeed, the nonmoving party must make a showing sufficient to permit the

---

[3] Serra objects to these facts because they are based on Mr. Hopkins's uncorroborated and "self-serving" testimony. (Doc. 121-1 at 12 ¶¶ 58–59). But the court may not reject a party's testimony merely because it is self-serving. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) ("As a general principle, a plaintiff's testimony cannot be discounted on summary judgment unless it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning that it relates to facts that could not have possibly been observed or events that are contrary to the laws of nature."); *Price v. Time, Inc.*, 416 F.3d 1327, 1345 (11th Cir.), as modified on denial of reh'g, 425 F.3d 1292 (11th Cir. 2005) ("Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving.").

jury to reasonably find on [his] behalf." *Calderon v. Sixt Rent a Car, LLC*, 114 F.4th 1190, 1199 (11th Cir. 2024).

Serra seeks summary judgment on Counts One, Three, Four, Five, Six, and Eight, and as to any claimed damages.[4] (Doc. 112). The court will address each claim separately, followed by the damages issue.

1.  Count One (Odometer Act)

In Count One, Mr. Hopkins alleges that Serra violated the Odometer Act by: (1) failing to disclose the actual mileage; (2) providing false odometer disclosures; (3) selling the car without a clear chain of title and with an altered or rolled back odometer; (4) using an unapproved and unsecured power of attorney form; (5) failing to provide Mr. Hopkins with the actual title and instead signing the title on his behalf using its own forms and without providing the mandatory disclosures; (6) selling Mr. Hopkins a stolen car for which Serra lacked clear title and could not certify the chain of title; (7) providing an inaccurate odometer disclosure on the title; and (8) hiding the title from Mr. Hopkins. (Doc. 1 at 17–18 ¶¶ 33–37).

The Odometer Act creates a private cause of action for violations of the statute or regulations committed "with intent to defraud." 49 U.S.C. § 32710(a), (b); *Owens*

---

[4] In a footnote, Serra attempts to incorporate by reference all filings in *Serra Nissan Oldsmobile, Inc. v. Id Auto Sales, Inc.*, No. 24-1716 (N.D. Ala.). (Doc. 112 at 7 n.1). This court's initial order instructs parties that "[t]he court will not consider arguments incorporated by reference to earlier filings and will not consider substantive arguments made in footnotes." (Doc. 6 at 15). The court therefore has not considered any arguments Serra does not make in the briefing filed in connection with this motion for summary judgment.

*v. Samkle Auto. Inc.*, 425 F.3d 1318, 1321 (11th Cir. 2005) ("[T]he necessary elements required for a private cause of action pursuant to this statute [are]: (1) that the defendant violated the Act or its regulations, (2) with intent to defraud."). It requires a person transferring ownership of a motor vehicle to provide written disclosures of either "the cumulative mileage registered on the odometer" or "that the actual mileage is unknown, if the transferor knows that the odometer reading is different from the number of miles the vehicle has actually traveled." 49 U.S.C. § 32705(a)(1). It prohibits the transferor from "violat[ing] a regulation prescribed under this section or giv[ing] a false statement to the transferee in making the disclosure required by such a regulation." *Id.* § 32705(a)(2). And it prohibits "[a] person acquiring a motor vehicle for resale" from "accept[ing] a written disclosure under this section unless it is complete." *Id.* § 32705(a)(3).

The regulations provide that a transferor "shall disclose the mileage to the transferee on the physical or electronic title." 49 C.F.R. § 580.5(c). That disclosure must include a certification that to the best of the transferor's knowledge, "the odometer reading reflects the actual mileage," or "[i]f the transferor knows that the odometer reading does not reflect a valid mileage display or differs from the mileage and that the difference is greater than that caused by odometer calibration error, they shall include a statement that the odometer reading does not reflect the actual mileage . . . ." *Id.* § 580.5(e)(1), (3). The regulations also prohibit one person from

signing the odometer disclosure statement "as both the transferor and transferee in the same transaction," unless authorized to do so by a power of attorney. *Id.* § 580.5(h); *see id.* §§ 580.13, 580.14. Finally, the regulations require that "a physical power of attorney . . . shall be set forth by a secure printing process or other secure process." 49 C.F.R. § 580.4(a).

Serra contends that (1) any claims relating to false title or the chain of title fail as a matter of law because the Odometer Act does not address title or chain of title; (2) Mr. Hopkins cannot establish that Serra violated a duty to disclose the mileage because it disclosed the CARFAX report showing the Indiana title with a title brand and, in any event, the mileage it disclosed was accurate; and (3) Mr. Hopkins cannot establish intent to defraud because there is no evidence Serra altered the odometer or fabricated documents. (Doc. 112 at 16–17 & n.2).

Serra's first argument relates to the viability of any claims relating to false title or the chain of title. (*Id.* at 16 n.2). Serra makes the argument in a footnote and provides no citations, either factual or legal, in support. (*Id.*). Accordingly, the court declines to address it. (*See* doc. 6 at 15 ("The court . . . will not consider substantive arguments made in footnotes.")); *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("[The Eleventh Circuit has] long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

Serra's second argument is that Mr. Hopkins cannot prove that Serra violated a duty imposed by the Odometer Act or its regulations because it disclosed the full CARFAX report, which included a reference to the Indiana branded title indicating that the recorded mileage might not be accurate, and in any event the car displayed the mileage disclosed on the title. (Doc. 112 at 17). Taking the evidence in the light most favorable to Mr. Hopkins, a jury could find that Serra presented him one page of the CARFAX report, which he signed, although he does not remember signing it. (Doc. 111-1 at 67; doc. 118-1 ¶¶ 6–7; *see also* doc. 118-15 at 25:25–25:30). That single page does not disclose the Indiana branded title or any inconsistency in the reported mileage for the car. (Doc. 111-1 at 67). Accordingly, a dispute of fact exists about whether Serra disclosed the existence of the Indiana title to Mr. Hopkins.

As for Serra's argument that the mileage it disclosed was accurate, the CARFAX report itself warns that when a title is branded with "not actual" mileage, that means the mileage listed might not be accurate. (*See id.* ("Mileage reported after [a 'not actual mileage'] reading is potentially unreliable.")). Moreover, even disregarding the Indiana title, the Alabama records reveal inconsistencies in the reported mileage that raise doubt about the odometer's accuracy, such as a reported mileage that mysteriously dropped by thousands of miles between May and September 2021 and then grew by thousands more between September 21 and September 27, 2021. (*See* doc. 111-5 at 5 (May 2021 bill of sale recording mileage

of 50,028); doc. 111-2 at 9 (September 21, 2021 title recording mileage of 45,900); *id.* at 10 (September 27, 2021 sale recording mileage of 55,424)).

Serra's final argument is that Mr. Hopkins cannot prove intent to defraud because it was not involved in seeking the false Indiana title, there is no evidence it altered the odometer or fabricated documents, and any intent to defraud must specifically relate to odometer readings. (Doc. 112 at 17; doc. 121 at 3). But taken in the light most favorable to Mr. Hopkins, a jury could find that Serra learned in September that the car had titles in both Alabama and Indiana, each reflecting different mileages and one reflecting a title brand. (Doc. 118-9; *see* doc. 118-7 at 8–9; doc. 91-1 at 20). And although it investigated the discrepancy (doc. 91-1 at 20), it did not disclose the discrepancy to Mr. Hopkins (doc. 118-1 ¶¶ 3–5). A jury could find that Serra gave Mr. Hopkins only one page of the CARFAX report, and that page omits any information about the Indiana title or the inconsistent mileage readings. (*See* doc. 111-1 at 67; doc. 118-15 at 25:25–25:30). Moreover, the intent to defraud need not relate to mileage specifically; instead, if a defendant violates the Odometer Act "with the intent to defraud [the] victim *in any respect relating to the Odometer Act or the regulations passed pursuant to it*, [the defendant is] liable." *Owens*, 425 F.3d at, 1321 (emphasis added). Because a jury could find intent to defraud, the court **WILL DENY** the motion for summary judgment on Count One.

2. Counts Three and Eight (Fraud Claims)

In Count Three, Mr. Hopkins asserts that Serra fraudulently misrepresented or suppressed information about the car's title and mileage.[5] (Doc. 1 ¶¶ 50–53). In Count Eight, he alleges that Serra fraudulently concealed various facts, including the true mileage, and that it used its position as attorney-in-fact to execute documents it did not show him. (*Id.* ¶¶ 90–91).

Before addressing Serra's arguments, the court notes that it is difficult to tell the difference between the fraudulent suppression claims asserted in Count Three and the fraudulent concealment claims asserted in Count Eight. (*Compare* doc. 1 ¶¶ 51–53, *with id.* ¶ 90). The only factual difference appears to be that in Count Eight, Mr. Hopkins alleges Serra required him to sign a power of attorney so that it could conceal information about the car, allegations that do not appear in Count Three.[6] (*Compare* doc. 1 ¶¶ 51–53, *with id.* ¶¶ 90–91). The court therefore construes Count Eight to relate solely to the power of attorney and Count Three to relate to any other alleged omissions of fact. *See* Fed. R. Civ. P. 8(e) ("Pleadings must be

---

[5] The court does not address the allegations of fraud that Serra does not challenge in its motion for summary judgment.

[6] Count Three incorporates by reference all preceding paragraphs. (Doc. 1 ¶ 49). However, even if that count incorporates the factual allegation that Serra required Mr. Hopkins to sign an improper power of attorney (*id.* ¶ 34), the rest of the count lists the specific instances of misrepresentation or suppression supporting the claim and contains no information about the power of attorney (*id.* ¶¶ 50–58). Moreover, reading Count Three to include a claim of fraudulent suppression based on the power of attorney would make Count Eight duplicative of the fraudulent suppression claim asserted in Count Three, and therefore subject to dismissal.

construed so as to do justice."). The court will consider any arguments Serra made about the power of attorney in the discussion of Count Eight. (*See, e.g.*, doc. 112 at 18) (arguing in the context of Count Three that Mr. Hopkins cannot establish use of a non-official power of attorney or concealment of the Alabama title).

Serra makes two arguments common to the claims of misrepresentation and suppression: that it did not misrepresent or omit any information because it disclosed the CARFAX report, and that Mr. Hopkins could not have reasonably relied on any representation or omission about the title or mileage because he signed the CARFAX report.[7] (Doc. 112 at 18, 25). The court will therefore begin with those arguments before turning to the claim-specific arguments.

### a. CARFAX Report

The court will discuss the elements of each fraud claim in more detail below, but for purposes of this common argument, both types of claims require, among other things, that (1) the defendant have either misrepresented or concealed a fact; and (2) the plaintiff have reasonably relied on that misrepresentation or omission. *Cockrell v. Pruitt*, 214 So. 3d 324, 338 (Ala. 2016); *Maloof v. John Hancock Life Ins. Co.*, 60 So. 3d 263, 268 (Ala. 2010); *Padgett v. Hughes*, 535 So. 2d 140, 142

---

[7] In supplemental briefing, Mr. Hopkins argues that the court should not grant summary judgment as to his claim of continuing fraud, which is based on Serra's failure to inform him when it learned, after the sale, that it could not have conveyed the title to him. (Doc. 131 at 4–6; *see* doc. 1 ¶ 53). But Serra did not move for summary judgment on that claim. (*See* doc. 112 at 17–20, 25–27). Accordingly, the court does not address that claim.

(Ala. 1988). Serra contends that its disclosure of the CARFAX report to Mr. Hopkins defeats both elements. (Doc. 112 at 18–19, 25–26). The court disagrees.

With respect to the disclosure of the information in the CARFAX report, a reasonable jury could find that Serra presented Mr. Hopkins with only a single page of the CARFAX report. (*See* doc. 118-15 at 25:25–25:30). That page begins with a disclosure about the effect of a "NAM title," but it does not indicate that the car at issue had such a title. (*See* doc. 111-1 at 67). The only complete entries about the car relate to Serra's servicing and listing of the car for sale. (*Id.*). Accordingly, Serra has not presented evidence that it disclosed the existence of the Indiana branded title or the inconsistent odometer readings to Mr. Hopkins.

Whether Mr. Hopkins reasonably relied on the misrepresentation or omission is more difficult. Alabama law provides that a plaintiff alleging fraudulent inducement cannot prove reasonable reliance where he "was fully capable of reading and understanding the terms of the contract involved in the transaction, but instead blindly relied on the defendant's oral representations to the exclusion of written disclosures in the contract to the contrary." *Massey Auto., Inc. v. Norris*, 895 So. 2d 215, 218 (Ala. 2004). A party who signs an instrument cannot, "in the absence of fraud, deceit or misrepresentation, avoid the effect of his signature, because he is not informed of its contents." *Id.* at 219 (alteration and emphasis omitted). Instead, the court may find reliance unreasonable as a matter of law "where the undisputed

evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written contract terms that clearly contradicted the alleged misrepresentations." *Id.* at 220 (quotation marks omitted).

However, that reasonable reliance standard applies only when the "terms of a *written contract* . . . contradict oral representations; it does not address the question of under what circumstances reasonable reliance is precluded by statements in documents other than the contract between the parties." *Farmers Ins. Exch. v. Morris*, 228 So. 3d 971, 984–85 (Ala. 2016) (some emphasis omitted). In *Morris*, the plaintiff was an insurance agent who worked for his father's insurance agency before and during his employment with Farmers. *Id.* at 974. Although recruiters from Farmers were aware of the plaintiff's other job, they told him that there was no conflict of interest. *Id.* at 975. The employment agreement did not contain any provisions about conflicts of interest. *Id.* at 985. But a training manual provided to the plaintiff explained that an agent who maintained an office with an agent or broker for another insurance company had a conflict of interest. *Morris*, 228 So. 3d at 986. There was conflicting evidence about whether the plaintiff had seen the training materials. *Compare id.* at 986 ("Mr. Morris testified that he never saw the materials Farmers now points to."), *with id.* at 993 (Shaw, J., dissenting) ("Morris acknowledged to Farmers that he had reviewed this material."). Farmers later

terminated the plaintiff's employment contract based on the conflict of interest and the plaintiff sued, alleging that Farmers fraudulently induced him to begin placing insurance policies with Farmers instead of his father's insurance agency. *Id.* at 981.

Farmers argued that the plaintiff had not reasonably relied on its representations about the lack of a conflict of interest because the training materials put him on notice that he had a conflict of interest. *Id.* at 984. The Alabama Supreme Court rejected that argument. *Morris*, 228 So. 3d at 984–87. The Court explained that it had never addressed "the question of under what circumstances reasonable reliance is precluded by statements in documents other than the contract between the parties, such as an online training manual." *Id.* at 984–85. Because the disclosure of the conflict-of-interest policy came from an extracontractual document and the plaintiff presented evidence that he had not reviewed that document, the Court held that a jury could find that the plaintiff reasonably relied on other extracontractual statements. *Id.* at 986–87.

Under *Morris*, a jury must decide whether Mr. Hopkins reasonably relied on Serra's misrepresentation or omission of information about the multiple titles and inconsistent odometer reports. Serra does not argue that the CARFAX report was part of the contract to buy the car. (*See generally* doc. 112). As a result, it appears to be an extracontractual document, like the training materials in the *Morris* case. And, as set out above, a jury could find that the single page of the CARFAX report

disclosed to Mr. Hopkins did not contain any of the information about the Indiana branded title or the inconsistent odometer readings. (*See* doc. 118-15 at 25:25–25:30; doc. 111-1 at 67). Accordingly, the court cannot grant summary judgment on the fraud claim based on either disclosure of the information or a lack of reasonable reliance.

### b. *Fraudulent Misrepresentation*

Under Alabama law, the elements of a fraudulent misrepresentation claim are "(1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation." *Padgett*, 535 So. 2d at 142. Alabama law further provides that the misrepresentation can be "made willfully to deceive, or recklessly without knowledge, . . . or . . . by mistake and innocently." Ala. Code § 6-5-101; *see Ex parte City of Montgomery*, __ So. 3d __, No. SC-2024-0619, 2025 WL 2487401, at *5 (Ala. Aug. 29, 2025) ("[A]n innocent misrepresentation is as much a legal fraud as an intended misrepresentation and the good faith of a party in making what proves to be a material misrepresentation is immaterial as to the question whether there was an actionable fraud if the other party acted on the misrepresentation to his detriment.") (quotation marks omitted).

Serra's only arguments about the claim of fraudulent misrepresentation are that (1) fraud requires actual knowledge and it did not know about any title defects;

and (2) Mr. Hopkins did not rely on any misrepresentations because he signed the power-of-attorney form and the title application, and he later returned to Serra to purchase another car. (Doc. 112 at 19).

The first argument is easily resolved: Alabama law does not require actual knowledge and Serra's innocence in making a misrepresentation is irrelevant for purposes of a fraudulent misrepresentation claim. *See* Ala. Code § 6-5-101; *Ex parte City of Montgomery*, 2025 WL 2487401, at *5. In any event, there is evidence that Serra was aware of the concurrent Indiana and Alabama titles well before it sold the car to Mr. Hopkins. (*See* doc. 118-9; doc. 118-7 at 8–9; doc. 91-1 at 20; doc. 111-3 at 1; doc. 111-1 at 17). Accordingly, a reasonable jury could find that it knew of the title defects.

As for Serra's arguments about reliance, it does not explain how Mr. Hopkins giving Serra a power of attorney establishes a lack of reliance on Serra's alleged misrepresentations. (*See* doc. 111-1 at 18). Serra also does not explain how Mr. Hopkins signing a title application prepared by Serra that contained a misrepresentation establishes that he did not rely on a that misrepresentation. (*See id.* at 17). And finally, Serra does not explain how Mr. Hopkins's decision to buy a car from Serra years after the alleged fraud establishes that he did not rely on Serra's misrepresentations at the time Serra made those misrepresentations. Accordingly,

the court **WILL DENY** the motion for summary judgment on Mr. Hopkins's claims of fraudulent misrepresentation.

### c. Fraudulent Concealment

The elements of a fraudulent concealment claim are: (1) the defendant actually knew a fact; (2) the defendant had a duty to disclose the fact; (3) the defendant concealed or suppressed that fact; (4) "the defendant's suppression induced the plaintiff to act or refrain from acting"; and (5) "the plaintiff suffered actual damage as a proximate result." *Cockrell*, 214 So. 3d at 338.

In Count Three and Count Eight, Mr. Hopkins alleges that Serra withheld various documents and pieces of information. (Doc. 1 ¶¶ 52–53, 90–91). Serra does not challenge every allegation. (*See* doc. 112 at 18, 25–27). The court therefore discusses only the parts of the claim that Serra actually challenges. *See Sapuppo*, 739 F.3d at 681. Serra contends that: (1) it did not conceal the Alabama title by using a non-official power of attorney because it used the standard form for car sales in Alabama; (2) it did not conceal an inaccurate odometer reading because it believed that reading was correct; (3) Mr. Hopkins could not have relied on any omissions because he bought the car as-is; and (4) Serra was under no obligation to disclose the actions of earlier owners of the cars because it did not know about those actions. (Doc. 112 at 18, 25–27).

### i.    Power-of-Attorney Form

Part of Mr. Hopkins's claim of fraudulent suppression is that Serra required him to sign a power of attorney and then used its position as attorney-in-fact to execute documents that contained information Serra had concealed from Mr. Hopkins. (Doc. 1 ¶ 91). Serra takes issue with Mr. Hopkins's allegations about the *form* of the power of attorney, but those allegations relate to his Odometer Act claim, not this claim of fraudulent suppression. (*See id.* ¶ 34).

In any event, to the extent Mr. Hopkins's allegations about the form of the power of attorney could be construed to relate to the claim of fraudulent suppression, Serra's argument would fail. It did not use the power-of-attorney form required by Alabama law. The Alabama Administrative Code requires the use of Form MVT 8-4 when transferring a vehicle. Ala. Admin. Code R. 810-5-75-.63(2)(a), (b). Serra used Form MVT 5-13. (*See* doc. 111-1 at 18). As a result, the court will not grant summary judgment based on this argument.

### ii.    Serra's Knowledge of the Actual Mileage

Serra argues that it did not know about the mileage discrepancy because the Alabama title showed a mileage of 45,900 miles and Serra documented an odometer reading of 55,424 miles. (Doc. 112 at 26). But a reasonable jury could find it was aware of the Indiana branded title, which indicated an inconsistency with the reported mileage, and which introduced doubt about the accuracy of the odometer.

(*See* doc. 118-9; doc. 118-7 at 8–9). Accordingly, the court will not grant summary judgment based on this argument.

### iii.    As-Is Purchase

Serra contends in part of one sentence that "Plaintiff signed multiple documents acknowledging the 'as-is' nature of the sale." (Doc. 112 at 26). However, it offers no arguments about how Alabama law treats a fraud claim in the context of an "as-is" sale. (*See id.*). Accordingly, it has abandoned this argument. *See Sapuppo*, 739 F.3d at 681.

### iv.    Serra's Lack of Knowledge about Earlier Owners' Actions

Serra asserts that it cannot be liable for fraudulent suppression because it was a good-faith purchaser and any concealment of facts occurred before it bought the car. (Doc. 112 at 27). But a reasonable jury could find that, even if Serra purchased the car in good faith, it quickly learned of issues with the title and odometer readings, yet it withheld that information from Mr. Hopkins. (*See* doc. 1118-9; doc. 118-7 at 8–9; doc. 91-1 at 20; doc. 111-3 at 1; doc. 111-1 at 17; doc. 118-15 at 25:25–25:30). Accordingly, the court will not grant summary judgment based on this argument.

### 3.  Count Four (Breach of Fiduciary Duty)

In Count Four, Mr. Hopkins asserts that Serra breached its fiduciary duty by failing to act in a commercially reasonable manner and in good faith, by committing perjury in filing false odometer disclosures and false affidavits about the mileage,

and by attempting to profit from the possession, receipt, and sale of cars with false titles, undisclosed branded titles, and altered odometers. (Doc. 1 ¶ 62).

A claim for breach of fiduciary duty requires the plaintiff to prove "the existence of a fiduciary duty, a breach of that duty, and damage suffered as a result of that breach." *Aliant Bank, a Div. of USAmeribank v. Four Star Invs., Inc.*, 244 So. 3d 896, 907 (Ala. 2017). Serra's only argument is that it did not owe Mr. Hopkins a fiduciary duty because a standard car sale does not create a fiduciary relationship between a car dealership and a customer. (Doc. 112 at 20).

Under Alabama law, an arm's-length relationship between a salesperson and a customer does not create a fiduciary relationship. *Maloof v. John Hancock Life Ins. Co.*, 60 So. 3d 263, 273 (Ala. 2010). However, "Alabama law . . . identifies a power of attorney as creating a fiduciary relationship." *Smith v. Wachovia Bank, N.A.*, 33 So. 3d 1191, 1197 (Ala. 2009). That is because a power of attorney creates an agency relationship under which the agent "implicitly covenants to use the powers conferred upon [the agent] for the sole benefit of the party conferring that power on [the agent] . . . . The principal-agency relationship is fiduciary in nature and imposes upon the agent a duty of loyalty, good faith, and fair dealing." *Id.* (quotation marks omitted). Here, Mr. Hopkins's execution of the power of attorney created a fiduciary relationship between Serra and Mr. Hopkins with respect to the acts authorized by the power of attorney. *See id.*; (doc. 111-1 at 18). Serra offers no argument about

whether this claim relates to those acts or others. (*See* doc. 112 at 20–21). Accordingly, the court will not grant summary judgment to Serra on this claim.

4.   Count Five (Negligent or Wanton Hiring, Training, Supervision, and Retention)

In Count Five, Mr. Hopkins asserts that Serra negligently or wantonly hired, trained, supervised, and retained the employees who sold him the car. (Doc. 1 ¶¶ 67–74).

In Alabama, claims of negligent hiring, training, or supervision require the plaintiff to establish "that (1) the employer hired, trained, or supervised an employee with an incompetency; (2) the employer knew of the incompetency or would have learned of it by exercising due care; and (3) the employee caused the plaintiff harm due to the incompetency." *Motley v. Express Servs., Inc.*, 386 So. 3d 766, 772–73 (Ala. 2023). Serra contends that Mr. Hopkins cannot prove any of those elements. (Doc. 112 at 22). There is evidence from which a jury could find that an employee had an incompetency and that the incompetency caused Mr. Hopkins harm (*see* doc. 118-15 at 25: 25–25:30; doc. 111-1 at 67), but the court agrees that Mr. Hopkins has not presented evidence that Serra knew of the incompetency (*see* doc. 112 at 22). Mr. Hopkins has not presented any evidence that this has occurred to any other customers. (*See generally* doc. 120). And although he contends that there is a pattern of behavior because four managerial employees were involved in Serra's acquisition and resale of the car (*id.* at 33), he has not explained how Serra should have been

aware of their actions (*see id.* at 33–34). Accordingly, the court **WILL GRANT** the motion for summary judgment on Count Five.

    5.  Count Six (Breach of Express Warranties)

In Count Six, Mr. Hopkins asserts that Serra breached express warranties that the car had a clean title, that the disclosures on the sales documents were true, that Serra had inspected the car and title history, and that the information in the advertising and sales documents was correct. (Doc. 1 ¶ 78).

Alabama law provides that a seller creates an express warranty by making "[a]ny affirmation of fact or promise . . . which relates to the goods and becomes part of the basis of the bargain." Ala. Code § 7-2-313(1)(a). When a seller makes an express warranty by affirmation, the goods must conform to the affirmation. *Id.* "Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but . . . negation or limitation is inoperative to the extent that such construction is unreasonable." *Id.* § 7-2-316(1). In other words, a seller cannot disclaim an express warranty. *See id.*; *La Trace v. Webster*, 17 So. 3d 1210, 1217 (Ala. Civ. App. 2008) ("Section 7-2-316(1) provides that an express warranty cannot be disclaimed by language in a sales contract."); *Gable v. Boles*, 718 So. 2d 68, 71–72 (Ala. Civ. App. 1998) (holding that an "as-is" sale did not negate a buyer's reliance on an express warranty). "The measure of damages for

breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount. . . ." Ala. Code § 7-2-714(2).

Serra argues that it did not make any express warranties because it sold the car "as-is" and Mr. Hopkins signed the CARFAX report. (Doc. 112 at 23). However, a seller cannot disclaim an express warranty. *See* Ala. Code § 7-2-3-316(1); *La Trace*, 17 So. 3d at 1217. And as discussed above, there is evidence from which a reasonable jury could find that Serra did not provide the full CARFAX report to Mr. Hopkins. (*See* doc. 118-15 at 25:25–25:30; doc. 111-1 at 67). Serra makes no other arguments about why its representations about the title and mileage would not constitute express warranties. (*See* doc. 112 at 23–24). Accordingly, the court will not grant summary judgment based on the lack of evidence that Serra made an express warranty.

Serra also argues that Mr. Hopkins's claim fails because he has not presented evidence of damages. (*Id.* at 24). Mr. Hopkins does not respond to this argument. (*See* doc. 120 at 34–35). However, Serra presented evidence that Mr. Hopkins paid $25,180 for the car in November 2021 (doc. 111-2 at 6, 8), and that in July 2022, Serra and another car dealership would not accept the car for a trade-in because of the branded title (doc. 111-14 at 8–9). This is not evidence of a specific amount of

damages, but it does show a substantial difference in the value of the car, even accounting for depreciation that would have occurred over the course of seven to eight months.

Finally, Serra argues that if Mr. Hopkins seeks "recovery of down payments, monthly payments, or insurance premiums, those are not recoverable under an express warranty theory." (Doc. 112 at 24). However, it cites no authority for that proposition. (*See id.*). Accordingly, the court will not address it. The court will not grant summary judgment in Serra's favor on Count Six.

6. Damages

In every count of his complaint, Mr. Hopkins requests actual or statutory damages, compensatory damages, and incidental and consequential damages. (Doc. 1 ¶¶ 41, 48, 58, 65, 76, 81, 87, 96, 103). In Count Four, he also references refunding the purchase price of the car, and in Counts Three and Five through Nine, he requests mental anguish and emotional distress damages. (*Id.* ¶¶ 58, 65, 76, 81, 87, 96, 103).

Serra contends that Mr. Hopkins has not supported any of his claimed damages because he has not shown the car's market value at the time of the sale or how its value diminished due to the title or odometer branding issues. (Doc. 112 at 28). As explained above, Serra presented evidence that Mr. Hopkins paid $25,180 for the car when he believed it had a clear title and an accurate odometer reading, and that several months later, Serra itself refused to accept the car for a trade-in

based on the title branding issues. (Doc. 111-2 at 6, 8; doc. 111-14 at 8–9). Accordingly, there is evidence that the title and odometer issues affected the value of the car. Moreover, Serra has not offered any authority to support its assertion that Mr. Hopkins must provide a vehicle appraisal or third-party valuation to establish the car's value. (*See* doc. 112 at 28).

Next, Serra argues again that car payments, insurance premiums, and trade-in value are not recoverable as consequential damages because they amount to "personal inconvenience rather than quantifiable economic harm." (*Id.* at 28–29). But the only case it cites in support of its argument is *Treadwell Ford, Inc. v. Campbell*, 485 So. 2d 312 (Ala. 1986), which does not address the availability of any type of damages, much less car payments, insurance premiums, trade-in value, or the distinction between "personal inconvenience" and "quantifiable economic harm." *See generally Treadwell*, 485 So. 2d at 315–18. Accordingly, Serra has not adequately supported this argument. *See Sapuppo*, 739 F.3d at 681.

Serra's third argument is that Mr. Hopkins cannot recover damages for emotional distress or reputational harm. (Doc. 112 at 29). Mr. Hopkins does not seek damages for reputational harm. (*See generally* doc. 1 at 11–33). Accordingly, the court **FINDS AS MOOT** the motion for summary judgment as to damages for reputational harm.

With respect to emotional distress damages, Mr. Hopkins seeks that form of damages in Counts Three and Five through Nine. (Doc. 1 ¶¶ 58, 65, 76, 81, 87, 96, 103). The court has already ruled that it will dismiss Count Five and therefore need not address the propriety of damages for that count. Count Three asserts fraudulent misrepresentation and fraudulent suppression; Counts Six and Seven assert breach of warranty claims; Count Eight asserts fraudulent concealment; and Count Nine asserts breach of contract. (*Id.* ¶¶ 49–58, 77–103). Serra's argument about the availability of emotional distress damages is limited to tort claims. (*See* doc. 112 at 29). Accordingly, because Counts Six, Seven, and Nine are not tort claims, the court will address this argument only in the context of the fraud claims asserted in Counts Three and Eight.

Serra argues that Alabama law does not permit recovery of emotional distress damages in tort actions unless the plaintiff suffered physical injury or the defendant acted intentionally or with malice. (*Id.* at 29). The case Serra cites relates to the availability of emotional distress damages in negligence actions specifically, not tort actions as a whole. (*See id.*); *AALAR, Ltd., Inc. v. Francis*, 716 So. 2d 1141, 1148 (Ala. 1998) (stating that the Alabama Supreme Court "has not recognized emotional distress as a compensable injury or harm in *negligence* actions outside the context of emotional distress resulting from actual physical injury or, in the absence of physical injury, fear for one's own physical safety") (emphasis added); *Hamilton v.*

*Scott*, 97 So. 3d 728, 735–37 (Ala. 2012) (adhering to the test set out in *Francis*). But Mr. Hopkins does not seek emotional distress damages in connection with his negligence claim.[8] (*See* doc. 1 ¶ 48).

The only case Serra cites about the availability of emotional distress damages in connection with a fraud claim is *Deupree v. Butner*, 522 So. 2d 242 (Ala. 1988). (Doc. 112 at 29). But *Deupree* says nothing about the availability of emotional distress damages for fraud claims. *See generally* 522 So. 2d at 243–248. Moreover, Alabama law provides that "[d]amages for mental distress may be awarded in a case of willful fraud." *Rsrv. Nat. Ins. Co. v. Crowell*, 614 So. 2d 1005, 1011 (Ala. 1993). Accordingly, the court will not grant summary judgment to Serra with respect to Mr. Hopkins's request for mental distress damages in connection with his fraud claims.

Serra's final argument is that Mr. Hopkins cannot prove that Serra's conduct caused any of his damages because he signed the CARFAX report and all associated paperwork and later returned to Serra to purchase another car. (Doc. 112 at 29–30). However, as discussed above, a reasonable jury could find that Serra did not provide a copy of the full CARFAX report to Mr. Hopkins and that his agreement to buy the car was based on either a misrepresentation or an omission of material facts. (Doc.

---

[8] To the extent Mr. Hopkins's request for compensatory damages could be read to include a request for emotional distress damages, the court agrees that Mr. Hopkins has not presented any evidence that he suffered a physical injury or any fear for his own safety, and he is therefore not entitled to emotional distress damages for his negligence claim. *See Francis*, 716 So. 2d at 1148.

118-15 at 25:25–25:30; doc. 111-1 at 67). And Serra has not explained how Mr. Hopkins's decision to buy another car from Serra affects the chain of causation between Serra's actions and Mr. Hopkins's decision to buy the car at issue in this case. (*See* doc. 112 at 29–30). Accordingly, the court will not grant summary judgment in Serra's favor as to Mr. Hopkins's requests for damages.

## III.    CONCLUSION

The court **WILL GRANT IN PART** and **DENY IN PART** Serra's motion for summary judgment. The court **WILL DENY** the motion for summary judgment as to Counts One, Three, Four, Six, and Eight, but **WILL GRANT** the motion as to Count Five. The court **FINDS AS MOOT** the motion for summary judgment as to damages for reputational harm and **WILL DENY** the motion on the other types of damages Mr. Hopkins requests.

The court will enter a separate partial summary judgment consistent with this memorandum opinion.

**DONE** and **ORDERED** this January 5, 2026.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE